IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Corel Lenhardt, | Civil Action No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **(JURY TRIAL DEMANDED)** |
| Charleston County School District, Anita Huggins, and Stephen Larson, | |
| Defendants. | |

The Plaintiff above named, complaining of the acts of the above-named Defendant, states as follows:

PARTIES AND JURISDICTION

1.      Plaintiff, Corel Lenhardt ("Lenhardt") is a resident and citizen of the County of Dorchester, South Carolina.

2.      Defendant Charleston County School District (the "District"), is a governmental agency and/or political subdivision of the State of South Carolina that does business and maintains offices and agents in the State of South Carolina.

3.      Defendant Stephen Larson ("Larson") is a citizen and resident of Charleston County, South Carolina.

4.      Defendant Anita Hugins ("Huggins" or "the Superintendent") is a citizen and resident of Charleston County, South Carolina

5.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, as Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12101 et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

6.    Venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division pursuant to 28 U.S.C. § 1391(b), in that the Plaintiff and Defendant Larson reside in the District, the District does business in the District, and a substantial part of the events giving rise to Plaintiff's claims occurred in the District.

7.    This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and to award damages and attorney's fees under the applicable statutes.

8.    The District is an employer with 15 or more employees and otherwise subject to Title VII.

9.    Larson, the Superintendent, and the District are subject to 42 U.S.C. 1981.

10.    As a government entity, the District and its employees are subject to 42 U.S.C. 1983.

11.    As employees of the District, Larson and the Superintendent are subject to 42 U.S.C. 1983.

12.    Plaintiff timely filed her complaint with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging discrimination based upon color, race, and disability. Plaintiff's charge of discrimination also included allegations of retaliation.

13.    On or about December 1, 2025, Plaintiff received a right to sue notice from the EEOC regarding the complaint described above.

14.    That Plaintiff timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above.

15.    Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of this action.

16.     Plaintiff is a Black/African-American and female.

17.     Defendant Stephen Larson was at all relevant times the principal of R.B. Stall High School ("Stall High") and acted under color of state law. Larson is sued in his individual capacity for damages and in his official capacity for damages, and declaratory/injunctive relief to the extent applicable.

18.     Defendant Anita Hugggins was at all relevant times the Superintendent of the District and acted under color of state law. Huggins is sued in her individual capacity for damages and in her official capacity for damages, and declaratory/injunctive relief to the extent applicable.

19.     Plaintiff has been employed in the education field since 2006 and began her employment with the District as an assistant principal ("A.P.") beginning in 2011.

20.     In or about 2016, Plaintiff began working for the District as an A.P. at Stall High in North Charleston, South Carolina.

21.     Plaintiff's direct supervisor at Stall High was the school's principal, Larson. Huggins as Superintendent, also served as Plaintiff's Supervisor.

22.     As an A.P., Plaintiff was qualified for her position and performed her job at a level that met the District's legitimate expectations.

23.     Prior to August 2024, Plaintiff was never issued any formal written or verbal disciplinary actions while employed with the District.

24.     On or about March 22, 2024, Plaintiff was injured at Stall high while attempting to assist in separating students involved in a fight (the "March 2024 Incident").

25.      As a result of the March 2024 Incident, Plaintiff suffered a concussion and traumatic brain injury.

26.     Due to her injuries, Plaintiff was initially placed out of work by medical professionals

from March 24, 2024, through April 7, 2024.

27.    On April 8, 2024, Plaintiff was allowed to return to work and placed on full duty by her medical providers.

28.    Plaintiff's medical providers documented ongoing symptoms from the head injury Plaintiff sustained during the March 2022 Incident, including post-concussive symptoms and related treatment needs (including therapy). Due to her symptoms, intermittent episodes of incapacity were anticipated.

29.    Plaintiff requested and/or took leave associated with her serious health condition and, as applicable, sought intermittent leave and job-protected leave under the FMLA.

30.    On or about, March 24, 2024, Plaintiff's FMLA leave was approved by the District and backdated to reflect the date of the March 2024 Incident.

31.    Plaintiff was approved for intermittent FMLA to last between March 22, 2024, to September 22, 2024.

32.    On or about March 25, 2024, Plaintiff filed a claim for benefits under the South Carolina Workers' Compensation Act.

33.    While Plaintiff was out on medical leave, Larson initiated an investigation targeting Plaintiff. This unwarranted investigation was based on allegations related to teacher evaluations and leave usage designations.

34.    On or about April 8, 2024, Larson met with Plaintiff regarding her return to work.

35.    During the April 8, 2024, meeting, Plaintiff requested the District provide reasonable accommodations under the ADA that would allow Plaintiff to perform the essential functions of her role as A.P. at Stall High School.

36.    During the April 8, 2024, meeting, Larson implied Plaintiff was malingering or not truly

injured and questioned her continued receipt of benefits and/or leave.

37.      Larson further implied that Plaintiff misrepresented her injury to take a vacation.

38.      Larson also made statements to District employees suggesting Plaintiff was dishonest about her condition and/or leave and suggested Plaintiff colluded with others regarding leave and vacation.

39.      During the April 8, 2024, meeting, Larson did not inform Plaintiff that she was under investigation or that her performance was purportedly at issue.

40.      At no time during Plaintiff's employment did Larson inform Plaintiff she was under investigation.

41.      On or about April 10, 2024, Plaintiff was placed out of work by her doctor due to the reoccurring symptoms she experienced due to her injury.

42.      On or about July 8, 2024, Plaintiff was released from her doctor to return to work. Plaintiff returned to Stall High to work under the accommodations she previously requested and discussed with Larson. On the same day Plaintiff returned to Stall, Larson told her she was not allowed to return to work and ordered her to leave the campus.

43.      On or about August 16, 2024, Plaintiff was instructed to attend a meeting with District representatives. This meeting was conveyed to Plaintiff to be a collaborative meeting to discuss her accommodations and a plan for her to return to work.

44.      Internal communications reflect the District's discussions of Plaintiff's medical restrictions, accommodations, and return-to-work status. However, Larson and the District made no attempt to properly consider Plaintiff's accommodation requests.

45.      When Plaintiff attended the August 16, 2024, meeting, she was questioned about alleged performance and attendance issues that were brought to her attention for the first time during the

meeting.

46.     Plaintiff was not prepared to discuss these issues raised in the August 16, 2024, meeting and asked for any questions to be presented to her in writing. Plaintiff confirmed this request in an email and informed the District she copied her attorney so communication could flow through him.

47.     The next day, on Saturday, August 17, 2024, Defendant emailed a list of questions to Plaintiff but did not copy or otherwise send these questions to Plaintiff's attorney.

48.     On or about August 30, 2024, without following up with Plaintiff, the Superintendent notified Plaintiff it was recommending termination of her employment with the District.

49.     The August 30, 2024, notice included allegations about Plaintiff related to "failure to complete teacher evaluations," "misrepresenting leave," "collusion," and "refusal to participate in an investigation," among other claims.

50.     The August 30, 2024, letter informed Plaintiff that the Superintendent recommended Plaintiff's termination for 1) "falsifying evaluation documents," and 2) "misrepresenting leave."

51.     Plaintiff denies the accusations in the August 30, 2024, letter, and contends they were false, exaggerated, selectively enforced, and/or used as a pretext for discrimination and retaliation.

52.     Pursuant to state statue, Plaintiff timely requested a hearing to challenge the termination decision. A hearing occurred on December 20, 2024 (the "Appeal Hearing").

53.     The Appeal Hearing and subsequent processes related to teacher/administrator employment action is codified under the South Carolina Teacher Employment and Dismissal Act ("TEDA"), S.C. Code Ann. §§ 59-25-410 et seq.

54.     Pursuant to TEDA, and in this case, the District designated a Hearing Officer to hold an evidentiary hearing on the superintendent's recommendation to terminate Plaintiff's employment.

55.     The Hearing Officer in this case was attorney, and certified mediator, Amy L. Gaffney,

Esq. (the "Hearing Officer").

56.    Pursuant to TEDA, the Hearing Officer must conduct a hearing on the Superintendent's recommendation and issue a report and recommendation containing findings of facts and conclusions of law.

57.    During the Appeal Hearing, Larson admitted that he signed off on an evaluation of a teacher without holding a conference with the subject teacher.

58.    During the Appeal Hearing, Larson admitted Plaintiff informed him that she was going on a family cruise and on a trip to Thailand before she went on these trips. With that knowledge, Larson informed Plaintiff she could take leave to attend these events.

59.    During the Appeal Hearing, Larson admitted that he approved all leave requested by Plaintiff.

60.    On or about January 10, 2025, the Hearing Officer recommended that the Superintendent's recommendation to terminate Plaintiff's employment not be upheld.

61.    On or about January 31, 2025, the District's Board of Trustees rejected the Hearing Officer's recommendation and terminated Plaintiff's employment, effective January 27, 2025.

62.    When the District rejected the Hearing Officer's recommendation, it did not review the transcript of the December 20, 2024, Hearing in violation of TEDA.

63.    The District took the position that the transcript of the December 20, 2024, hearing was not part of the "record" the District's Board of Trustees was required to consider under TEDA.

64.    The Superintendent took the position that the transcript of the December 20, 2024, hearing was not part of the "record" the District's Board of Trustees was required to consider under TEDA.

65.    As of the date of the filing of this Complaint, the Superintendent and the District maintain their position that the transcript of the December 20, 2024, hearing was not part of the "record"

the District's Board of Trustees was required to consider under TEDA.

66.     While the District's Board of Trustees was deliberating Plaintiff's termination recommendation in executive session, the Superintendent was present during deliberations and provided information to the Board regarding the December 20, 2024, Hearing and/or the circumstances regarding her decision to recommend Plaintiff's termination.

67.     Further, while the District's Board of Trustees was deliberating the Superintendent's termination recommendation in executive session, other representative(s) of the Superintendent was/were present during deliberations and provided information to the Board regarding the December 20, 2024, Hearing.

68.     Plaintiff also requested the District Board deliberate the Superintendent's termination recommendation publicly as required by District Board Policy BE.

69.     The District rejected Plaintiff's request for a public hearing and public deliberation.

70.     Plaintiff, as a Black/African-American, is a member of a protected class on the basis of race and color.

71.     Throughout Plaintiff's employment, Plaintiff was subjected to disparate treatment because of race and color, including but not limited to the distribution of Plaintiff's workload.

72.     By way of example, Plaintiff's workload was not redistributed to others A.P.'s when she was on FMLA leave. Other employees outside of Plaintiff's protected class had their work redistributed when on leave and additional resources were allocated to address the absence of an administrator.

73.     By way of further example, Plaintiff was tasked with completing work and attending a meeting while she was on FMLA leave. Other employees outside of Plaintiff's protected class had their work duties reassigned when they went on leave. One such Employee was Catherine Hines-

McCormick.

74. Plaintiff's concussion/TBI and resulting symptoms constitute an actual disability and/or a record of disability within the meaning of the ADA.

75. Plaintiff was regarded as disabled by Defendants within the meaning of the ADA due to Plaintiff's concussion/TBI and resulting symptoms.

76. Plaintiff could perform the essential functions of her job with reasonable accommodation.

77. Plaintiff requested reasonable accommodation(s) and/or engaged in the interactive process. Defendants failed to engage in good faith and/or denied accommodation(s) without undue hardship.

78. Defendants retaliated against Plaintiff for requesting accommodation and/or for taking protected medical leave by intensifying scrutiny, issuing baseless accusations, and terminating her employment.

79. At all relevant time periods, Plaintiff had a serious health condition and was eligible for FMLA leave.

80. Plaintiff provided notice and supporting medical documentation sufficient for FMLA leave and intermittent leave.

81. Defendants interfered with Plaintiff's FMLA rights by requiring her to continue to work while on FMLA leave, initiating a baseless investigation while she was on FMLA leave, dissuading her from using FMLA leave, and terminating her employment.

82. Defendants also retaliated against Plaintiff for using or attempting to use FMLA leave by treating her leave as a negative factor and by taking adverse actions culminating in termination.

<u>FOR A FIRST CAUSE OF ACTION:</u>
<u>FMLA INTERFERENCE</u>
(Against All Defendants)

83.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

84.     Plaintiff was at all relevant times an "eligible employee" under the FMLA.

85.     Defendant was at all relevant times a covered "employer" under the FMLA.

86.     Plaintiff was entitled to FMLA leave for her own serious health condition and requested such leave in accordance with Defendant's policies and the FMLA.

87.     On or about March 24, 2024, Defendant approved and/or agreed that Plaintiff's FMLA leave would begin as of the date of her March 22, 2024, injury.

88.     Defendants interfered with, restrained, and denied Plaintiff's exercise and attempted exercise of FMLA rights by taking actions to include, but are not limited to:

     a.     requiring Plaintiff to complete work-related tasks while on FMLA leave,

     b.     subjecting her to an unwarranted investigation,

     c.     making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

     d.     making the recommendation Plaintiff's employment be terminated, and

     e.     terminating Plaintiff's employment.

89.     Defendants' interference with Plaintiff's FMLA rights was willful and in reckless disregard of Plaintiff's federally protected rights.

90.     As a direct and proximate result of Defendants' interference with Plaintiff's FMLA rights, Plaintiff has suffered damages including lost wages and benefits, loss of future earnings, and other monetary and non-monetary damages, has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and

personal injuries, and is entitled to appropriate legal and equitable relief, including liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §2617.

91.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from Defendant.

FOR A SECOND CAUSE OF ACTION:
FMLA RETALIATION
(Against All Defendants)

92.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

93.    Plaintiff engaged in protected activity under the FMLA when she requested and was approved for FMLA leave for her serious health condition.

94.    Defendants knew that Plaintiff had requested and been approved for FMLA leave and that her leave was scheduled to begin on or about March 22, 2024.

95.    Plaintiff suffered adverse employment actions including, but not limited to, the termination of her employment on or about January 27, 2025.

96.    There is a close temporal proximity between Plaintiff's FMLA request/approval and her termination, including the investigation leading to the termination recommendation.

97.    Defendants discriminated against Plaintiff and subjected her to retaliation for exercising and attempting to exercise her FMLA rights by taking actions to include, but are not limited to:

a.    requiring Plaintiff to complete work-related tasks while on FMLA leave,

b.    subjecting her to an unwarranted investigation,

  c.  making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

  d.  making the recommendation Plaintiff's employment be terminated, and

  e.  terminating Plaintiff's employment.

98. Defendants' stated reasons for terminating Plaintiff, an alleged violation of its policies, were both false and pretextual.

99. Defendants' true motive for terminating Plaintiff and otherwise subjecting her to adverse actions was to discriminate and retaliate against her for seeking and attempting to use FMLA-protected leave.

100. As a direct and proximate result of Defendants' violation of Plaintiff's FMLA rights, Plaintiff has suffered damages including lost wages and benefits, loss of future earnings, and other monetary and non-monetary damages, has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and is entitled to appropriate legal and equitable relief, including liquidated damages, attorneys' fees, and costs.

101. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from Defendants.

FOR A THIRD CAUSE OF ACTION:
VIOLATION OF THE ADA
DISCRIMINATION BASED ON DISABILITY
(Against the District)

102. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

103.    At all times relevant to this action, the District was an employer within the meaning of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111(5)(A), employing fifteen (15) or more employees.

104.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), in that she had an impairment that substantially limited one or more major life activities, or her employer regarded her as having such an impairment.

105.    Defendants were aware that Plaintiff had an impairment as of March 22, 2024, knew she and regarded her as an individual with a disability.

106.    Plaintiff is a qualified individual within the meaning of the ADA, 42 U.S.C. § 12111(8), as she could perform the essential functions of her position as a school administrator with or without reasonable accommodation.

107.    Throughout her employment with the District, Plaintiff was performing her job satisfactorily.

108.    Plaintiff met all of the District's legitimate job-related expectations and was successfully evaluated by the supervisors and peers who evaluated her performance.

109.    Despite Plaintiff's qualifications and satisfactory performance, the District, by and through its supervisory agents and employees, subjected Plaintiff to adverse employment actions because of her disability.

110.    Specifically, District employees and agents discriminated against Plaintiff by taking actions to include, but are not limited to:

      a.   requiring Plaintiff to complete work-related tasks while on FMLA leave,

      b.   subjecting her to an unwarranted investigation,

    c.  making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

    d.  making the recommendation Plaintiff's employment be terminated, and

    e.  terminating Plaintiff's employment.

111.   Defendants' conduct constitutes discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12112(a), which prohibits covered employers from discriminating against a qualified individual on the basis of her disability.

112.   The District's decision to terminate Plaintiff was motivated by her impairment and by its discriminatory animus toward her disability.

113.   The District's stated reasons for terminating Plaintiff's employment were false and pretextual, and the true motivation for the District's adverse actions was Plaintiff's disability.

114.   Defendants' actions humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

115.   That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

116.   That the District's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the

Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from the District.

FOR A FOURTH CAUSE OF ACTION:<br>
FAILURE TO ACCOMMODATE<br>
IN VIOLATION OF THE ADA<br>
(Against the District)

117. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

118. Throughout her employment with the District, Plaintiff was performing her job satisfactorily.

119. During her employment, Plaintiff requested reasonable accommodations for her impairment, including working in areas less prone to physical altercations, not being required to intervene in physical altercations, limiting her voluntary administrator roles, and working a modified schedule.

120. The District, through its agents and supervisors, failed and refused to provide those reasonable accommodations and further refused to engage in an interactive process to determine what reasonable accommodations could be implemented.

121. The District's refusal to accommodate Plaintiff's known disability caused her to be removed from work altogether, subjected to an unwarranted investigation, and ultimately terminated from her employment.

122. The District's actions constitute a failure to make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability, in violation of the ADA.

123. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, being discharged from her employment with the District.

124.   Plaintiff's treatment was different from similarly situated employees outside her protected class.  By way of example, Defendant treated Plaintiff differently by taking actions to include, but are not limited to:

    a.   requiring Plaintiff to complete work-related tasks while on FMLA leave,

    b.   subjecting her to an unwarranted investigation,

    c.   making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

    d.   making the recommendation Plaintiff's employment be terminated, and

    e.   terminating Plaintiff's employment.

125.   There is additional evidence that gives rise to an inference of unlawful disability-based discrimination to include, but not limited to Plaintiff's supervisor making comments that she was "faking" her injuries.

126.   Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

127.   That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

128.   That Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff

and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from the District.

FOR A FIFTH CAUSE OF ACTION:
HOSTILE WORK ENVIRONMENT
IN VIOLATION OF THE ADA
(Against the District)

129.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

130.    During the course of Plaintiff's employment the District's supervisory and managerial employees subjected Plaintiff to harassment and a hostile work environment because of her disability.

131.    The harassment and hostility Plaintiff endured included, but was not limited to, the following conduct:

      a.    requiring Plaintiff to complete work-related tasks while on FMLA leave,

      b.    subjecting her to an unwarranted investigation,

      c.    making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

      d.    making the recommendation Plaintiff's employment be terminated, and

      e.    terminating Plaintiff's employment.

132.    The discriminatory comments, actions, and humiliation were severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile, and abusive working environment.

133.    the District, through its managers and agents, knew or should have known of the harassment and hostile conditions to which Plaintiff was subjected but failed to take any prompt or effective remedial action.

134. The District's conduct violated 42 U.S.C. § 12112(a), which prohibits discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment, and 42 U.S.C. § 12203(b), which prohibits coercion, intimidation, threats, or interference with the exercise of rights under the ADA.

135. As a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

136. That the District's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the District.

FOR A SIXTH CAUSE OF ACTION:
RETALIATION
IN VIOLATION OF THE ADA
(Against the District)

137. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

138. During her employment, Plaintiff engaged in protected activity under the ADA when she undertook acts including but not limited to requesting reasonable accommodations for her impairment.

139. The District, by and through its supervisors and managers, was aware of Plaintiff's protected activity.

140.    Following Plaintiff's complaints and requests for accommodation, the District retaliated against Plaintiff by taking actions to include, but are not limited to:

      a.     requiring Plaintiff to complete work related tasks while on FMLA leave,

      b.     subjecting her to an unwarranted investigation,

      c.     making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

      d.     making the recommendation Plaintiff's employment be terminated, and,

      e.     terminating Plaintiff's employment.

141.    The District's actions constitute unlawful retaliation in violation of the ADA, which prohibits an employer from retaliating against an employee for opposing any act or practice made unlawful by the ADA.

142.    Defendants' retaliatory conduct was willful, deliberate, and carried out with reckless disregard for Plaintiff's federally protected rights.

143.    As a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

FOR A SEVENTH CAUSE OF ACTION:
VIOLATION OF TITLE VII
DISCRIMINATION BASED ON
RACE/COLOR
(Against the District)

144.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs

above as fully as if set forth herein verbatim.

145. Plaintiff, as a person who identifies as Black/African-American, is a member of a protected class under Title VII.

146. Throughout her employment with the District, Plaintiff was performing her job satisfactorily.

147. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, unwarranted suspension, and being terminated from her employment with the District.

148. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff was not allowed to socialize with coworkers when other Caucasian-American employees were allowed, and even encouraged, to do so.

149. Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

150. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

151. That the Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive

damages from the Defendants.

FOR AN EIGHTH CAUSE OF ACTION:
VIOLATION OF TITLE VII
RETALIATION
(Against the District)

152.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

153.    As alleged above, Plaintiff complained to Defendants that she was being discriminated against based on her disability.

154.    That Plaintiff's complaints were made in good faith and constitute protected activity under Title VII.

155.    Defendants' actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

156.    Plaintiff, on numerous occasions, complained to Defendants about the above-described disability-based discrimination and hostile work environment and the District was on notice that it was occurring.

157.    Despite being notified of the above-mentioned conduct, Defendants wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendants continued to subject Plaintiff to race-based discrimination in violation of Title VII.

158.    Subsequent to and in retaliation for Plaintiff making complaints, Defendants created and allowed the work environment to be so hostile that no person could have withstood such treatment. To further retaliate against Plaintiff, Defendants suspended Plaintiff's employment and later terminated her for making complaints about discrimination.

159.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered

severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

160.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from the Defendants.

FOR A NINTH CAUSE OF ACTION:<br>
VIOLATION OF TITLE VII<br>
HOSTILE WORK ENVIRONMENT<br>
(Against the District)

161.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

162.    During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by the District and its agents.

163.    The hostile environment Plaintiff was subjected to was based on her race and disability.

164.    Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

165.    The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, Defendants knew about, created, cultivated, and allowed the work environment to be hostile.

166.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has

suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

167.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendants.

FOR A TENTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RACE DISCRIMINATION
(Against All Defendants)

168.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

169.    Plaintiff identifies as Black/African-American.

170.    Throughout her employment with the District, Plaintiff was performing her job satisfactorily.

171.    Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, receiving unwarranted disciplinary actions, and being terminated from her employment with Defendant.

172.    Plaintiff was subjected to adverse employment actions by Defendants and agents of her employer including, but not limited to, bullying, intimidation, unwarranted suspension, and being terminated from her employment with Defendant.

173.    Plaintiff's treatment was different from similarly situated employees outside her protected class.

174.    Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work

performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

175.    Defendants' actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

176.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

177.    That the Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendants.

178.    Defendants improperly investigated Plaintiff due to her race.

179.    Defendants improperly suspended Plaintiff due to her race.

180.    Defendants terminated Plaintiff's employment due to her race.

181.    Plaintiff was discriminated against in violation of 42 U.S.C. 1981.

182.    As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

183.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and he is entitled to recover punitive damages from Defendants to the extent allowed by law.

FOR A TWELFTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
HOSTILE WORK ENVIRONMENT
(Against All Defendants)

184.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

185.    During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by Defendants and their agents.

186.    Defendants' conduct as described above was unwelcome.

187.    The hostile environment Plaintiff was subjected to was due to her race.

188.    Defendants' actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

189.    Defendants wholly failed to take prompt and effective remedial action to investigate and end the illegal conduct and Defendants continued to subject Plaintiff to race-based discrimination in violation of 42 U.S.C. 1981.

190.    Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

191.    The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, Defendants knew about, created, cultivated, and allowed the work environment to be hostile.

192.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and

future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

193.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from Defendants.

<u>FOR A THIRTEENTH CAUSE OF ACTION</u>
<u>VIOLATION OF 42 U.S.C. 1983</u>
(Against All Defendants)

194.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

195.    As a public school educator, Plaintiff has a property interest in continued public employment.

196.    Under South Carolina and federal law, the government must provide Plaintiff with meaningful notice and opportunity to be heard before she may be deprived of continued employment as a public-school educator.

197.    Plaintiff identifies as Black/African-American.

198.    Defendants Charleston County School District, Huggins, and Larson acted under color of state law as Plaintiff's employer and, with respect to Larson and Huggins, as Plaintiff's supervisors with decision making authority and as agents of the District.

199.    As stated above, Plaintiff was discriminated against and discharged in violation of 42

U.S.C. 1983. Defendants' discriminatory motive was the but-for cause of the adverse actions taken against Plaintiff to include:

     f.  requiring Plaintiff to complete work-related tasks while on leave,

     g.  subjecting her to an unwarranted investigation,

     h.  making false statements accusing Plaintiff of collusion, misrepresenting leave, falsifying documents,

     i.  making the recommendation Plaintiff's employment be terminated, and,

     j.  terminating Plaintiff's employment.

200.    Plaintiff was treated less favorably than similarly situated individuals of a different race, including those who were allowed to socialize with coworkers. These individuals included, but were not limited to Amy Maziejka, Virginia Sayer, Claudia Newbern, Brittany Cummings, Stephanie Payerle, Tabytha Walls, and other Caucasian-American District employees.

201.    Defendants also deviated from standard procedures to include, but are not limited to:

     a.  not providing the District Board of Trustees with the transcript of the December 20, 2024, administrative hearing to consider when it was deliberating the Superintendent's recommendation Plaintiff's employment be terminated,

     b.  refusing to adopt the report and recommendation of the Hearing Officer without explanation

     c.  allowing the Superintendent and her representative(s) to attend the executive session meeting to discuss Plaintiff's employment

     d.  refusing to deliberate in public as required by District Board Policy BE

     e.  other customs and practices of the District to deprive Plaintiff of her substantive and procedural due process rights.

202.    At the time Plaintiff was discharged from her employment, she was performing the functions of her employment in a matter which met her employer's expectations.

203.    Defendants' treatment of Plaintiff as described above violated her substantive and procedural due process rights in violation of 42 U.S.C. 1983.

204.    As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

205.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, to the extent allowed by law, Plaintiff is entitled to recover punitive damages from Defendants. Plaintiff further seeks to be reinstated to her position.

WHEREFORE, Plaintiff requests a jury trial on all causes of action and prays for the following relief against Defendant: for such amount of actual and special damages as allowed by law and the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorneys' fees, prejudgment interest and for such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED,

**FERGUSON LAW AND MEDIATION, LLC**

s/*Emmanuel J. Ferguson, Sr.*
Emmanuel J. Ferguson, Sr.
Federal Bar #11941
171 Church Street, Suite 160
Charleston, South Carolina
29414 (843) 491-4890
telephone
emmanuel@fergusonlaborlaw.com

*Attorney for Plaintiff*

February 28, 2026
Charleston, South Carolina